For assembly here on short notice, we have before us a matter of Predator Carlton Willis v. Kim Guadagno. And Judge Valesky, can you hear us? I can. Okay. We can barely hear you. I'm trying to talk a little louder. Does that help at all? A little bit. I think that doesn't really speak out. I think maybe Mara and William are going to try something here. How about trying it now? Mara, I can hear you now. Better. Better. I think my immersion is now. Good. Are you ready to proceed? Yes, Your Honor. Good. Okay. Is the court going to sessionally request that the court magnify the measure at all times? Sure. Thank you, Your Honor. Thank you, Your Honor. In this case, the decision to allow the district court to run almost exclusively on two cases out of the action. Before we do that, let's find out where we are right now because you've brought actions both in state court and in federal court. And we have read the decision of the appellate division, which denied your request for relief. And they did not address the constitutional issues. I think they were referring both to the state and federal constitutional issues. Can you tell me if we're wrong on that? And we find that this morning the New Jersey Supreme Court has issued an order denying your motion for stay and in this position a petition for certification. And perhaps you could give us your view as to where things stand in the state proceedings. Is this the end of the state proceeding? Given the time on this here and at least as we've been advised by the Kellys that they would print the ballots today or in the next few days, this is pretty much the end of the proceeding in the New Jersey state courts. Your Honor, when it happened, actually I just received notice while we were in this courtroom, I said a motion for immersion relief was denied. That means that the clerks will go forward with the printing and mailing of the absentee ballots, the programming of the machines by Friday. That will cause irreparable harm to Carla Willis without a doubt, a fact recognized by the district court. We do have a petition for certification pending before the Supreme Court. That has not been acted upon, as I understand it, from today's order. But there is a guidance that it needs to be taken properly upon. That's correct, Your Honor. And that puts us in the mind that I always expected that we would get, which is why we filed this case in the federal district court of New Jersey, because we have a prosecution issue that needs to be reached. Now, so that puts the federal courts in a position of some tension, if not opposition, to what the New Jersey courts are doing. Am I correct about that? I don't agree with you, Your Honor, and here's the reasons why. The consultation issue is one of federal dimension. It's already been addressed in Robertson v. Bartels. And it would be consistent with the decision of the New Jersey Supreme Court in New Jersey Downtown Community v. Sampson. In particular, in that case, already addressed the concept that if the court has been exploring the case concerning election laws, the New Jersey Supreme Court has decided that they are directed by principle and precedent to construe those laws so as to preserve the parliament right of the voters to exercise the franchise. In particular, the court says we have understood our legislation establishing the mechanism by which elections are conducted in the state to intend that the law be interpreted to allow for great scope for public participation in the electoral process, to allow candidates to get more of a ballot, to allow parties to put their candidates on the ballot, and most importantly, to allow voters to choose on election day. Let me ask you just a... In the argument you made in the district court for Judge Shulman, you made a facial or applied challenge for both. Oh. And the judge said, looking at the transcript on page 5, when he was reviewing his decision, I should be clear that I take Mr. Tampusi's challenge to be a facial one and not as applied, and I don't see any objection with you to that. Judge, at that point in time in the colloquy, it was clear that Judge Shulman was going to move on from the facial challenge. I disagreed with that. I found that to be an error. And that should have been addressed by Judge Shulman on the left. In fact, I think if you look through the colloquy of the transcript, you will see that, repeatedly, I raised an as-applied challenge before Judge Shulman. Judge Shulman made it very clear that he was only going to move on the facial challenge. He couldn't because... He believed that... I disagree, but I didn't care if it was state issues or what. Well, it was part of the abstention argument, where he believed that he was required to abstain. Yeah, it follows up. It's not my intention, as we have discussed, to address state law issues, to interpret the state constitution as the reason for the decision of the Secretary of State. At some point in time, Judge, respectfully, I had to stop arguing with the district judge. At that point in time, I made the decision to stop arguing with the district judge, that he should do an as-applied challenge. He did not do that. I think that was error. And I think it's error in a substantial proportion because now we don't have a factual record on the as-applied challenge on a matter that absolutely requires constitutional review in order to prevent irreparable harm to Carl Lewis and to the voters of New Jersey, in particular, the voters of the 8th District of New Jersey, who will be not denied an opportunity to cast a ballot for a Democrat other than by writing for the 8th District. Judge, I want to thank the state courts, who have a greater interest than the federal courts in promoting the values and the principles that you've enunciated, but they apparently have chosen not to do that. And that's why I filed the case in the United States District Court, because I did not want to lose the opportunity to assert the constitutional rights. The New Jersey state courts can decide state and federal constitutional issues just as well as the federal courts. Judge, we have to look at this case in procedural posture in which it went to the appellate division. It went to the appellate division on a review of an agency decision, which requires a definitional standard of review. And we also have the concept in New Jersey law that wherever possible, the courts will avoid the constitutional issue if they can rule on other grounds. But in this case, Judge, the case that was filed in the United States District Court, the constitutional issue is the issue. But did you raise constitutional issues before the appellate division? We did. We raised the constitutional issues. Facial and as a client. We raised all the constitutional issues before the appellate division. And as a good lawyer, you would want to do that. Yes, sir. And we did. And that's why we're here, because we have no other choice to get this resolved. The constitutional issue addressed, and it's an important one, Judge, because it indicates at least three different constitutional rights. The right to trial. The right of the voters to make a choice at the ballot box. The right of a candidate to work unencumbered by discriminatory laws. Let's assume you're right. Why shouldn't the New Jersey Supreme Court correct the error, as you say, by the appellate division? Why shouldn't the federal court? Do you have the power to correct an error by, say, an immediate appellate court or the New Jersey Supreme Court? This court absolutely has the power to rule on the federal constitutional issue. In my mind, there is no doubt about that. There is a constitutional issue, a federal constitutional issue, placed squarely in front of this court, for which we are not guaranteed any other review in any other court. Here, we pose the issue straightforward and directly so that we would have a body that could hear this and address it. Well, you say guaranteed, but the New Jersey Supreme Court could have addressed it, so you have the same guarantee there. I mean, if we were to abstain, saying this is a state issue, you'd be backing New Jersey. Judge, if you were to abstain... New Jersey courts. If you were to abstain, you'd be wearing the proper approaches to impose a stay, unlike litigation here. But if you were to do that, Carl Lewis will suffer irreparable harm. The voters of the 8th District of New Jersey will suffer irreparable harm. So we are applying to this court for emergent relief on a constitutional issue that now we know will not be addressed before the absentee and bail ballots go out and the election machines are programmed. You're here before us on a stay, and this relates to a primary win on June 7th. Yes, sir. Okay. And is Mr. Lewis, would he be the only candidate in the Democratic primary? He is the only candidate in charge for the Democrat primary. Help us with some New Jersey law on what happens in two scenarios. There may be more than two. It's our understanding that if someone is nominated and then is taken off the ballot, that the county committees of the relevant counties under state law can nominate somebody else or can put somebody else in so that they'll be a candidate in the general election. I don't know. Tell me if we're right about that. The other side is what happens if the election goes ahead, the primary goes ahead, and there's no Democratic candidate. Is it possible under New Jersey law for some county committees or some of their organizations, Mr. Lewis or anybody else, on the ballot after the primary? Judge, in order to replace Mr. Lewis on the ballot at this point in time, we would more likely than not be required to get a court order to do so from the state court. There is procedural mechanisms in the law to replace candidates that are on the ballot that withdraw. There are certain timeframes that have to be captivated to determine that. That's the answer to number one. So there are procedures, but in this particular case, given the timeframe that has passed and how the vacancy is created, I believe that I would more likely than not be required to go to state court to get an order allowing us to fill this vacancy out of time, even though I understand that's what the New Jersey statute says. Would that be by the county committees that are making the nomination, or how does that work? It would be either by the county committees of the county that make up the district or by the committee on vacancies. I'm sorry. You know, each nominating petition creates a committee on vacancies. I see. I believe that the time has passed for those to be made at this juncture. Okay. Well, we'll hear from the attorney general and see what her view is on it. But so there is the point. Let's assume for purposes of argument that Mr. Willis is not on the ballot when it goes, and so it comes to himself as a complete black. There is a possibility, obviously not something you want to rely on, but a possibility that you could get a court order that might put him on the ballot this summer. I can't say for certain that that would occur. Right. I understand. And that's the major risk. You would have to explore all and exhaust all options in that regard. The second question that you asked me that I didn't answer yet, Judge, was that what happens if no one's on the ballot? Will there be a Democrat on the ballot come November? Only if, only if, a valedictorian candidate has garnered enough votes in primary, will there be a candidate on the ballot under that scenario? So there is the real likelihood, Judge, that there will be no Democrat in November on the ballot to be aiding that congressional district. That's the discretionary court order that might put somebody on the ballot. That's correct, Your Honor. Judge, I have very little time left. No, we're not going to give you more time. Okay. Because there's really the key part of the argument that I want to make is why Samoonian doesn't control, which I think is very clear and very brief, but why Robertson v. Bartels does apply in this case. And the answer is this, Judge. There's so many inexplicable reasons, myself included. Until last night, I didn't realize that the Robertson case was also affirmed summarily by the United States Supreme Court, which creates the same binding precedent that was followed by the district court judge. And I note in the district court judge's decision, when he cites Robertson v. Bartels, he does not pick up the affirmation, the summary affirmation by the Supreme Court. That being the case, we are now faced with a court with a case, Robertson v. Bartels, which is addressing the exact same constitutional provision that is before this court now, although a different clause I never phrased in that constitutional provision, where the same exact bargains of constant interest were advanced and rejected by Judge W. Lewis v. Robertson. The same exact offices apply. The only distinction is that between intrastate and interstate commerce. And here's why this doesn't work, Judge, because, first of all, Judge Becker always recognized that when we're talking about interstate commerce, the scrutiny is higher and stricter than interstate commerce. So clearly, if Bartels, for interstate commerce, meets that criteria, it should apply here to the same criteria. Because here's what would happen and here's the result. Now, I'm sorry. Are you arguing on the facial challenge or the S-applied or both? On the facial challenge, that's all. You are? What is the official challenge? This is, isn't your point that this is about Mr. Lewis as opposed to the next person down the road? What do we care about facial challenge? It is about Mr. Lewis, but it's such an important constitutional provision that it has occurred in numerous times in New Jersey. Matthews, Calaway, Robertson, at least three times, the issue has come up, the general constitutional issue. I will go directly to the S-applied challenge to Mr. Lewis, but the issue needs to be addressed because there is no distinction between intrastate commerce and interstate commerce for the basis of this constitutional analysis. And here's why. If you've been in Southern Mississippi County for four years before an election, you want to run for Senate, and you move to Essex County one month before the filing deadline for the petitions, you're not going to be disqualified. You don't know anything about the district. The district knows nothing about you. Two of the state reasons offered by the Attorney General's office. You're not going to be challenged or disqualified because the Attorney General has conceded that they are not enforcing that clause of the New Jersey Constitution. I'm just trying to get some perspective on this. As to Mr. Lewis, about whom this case revolves, because he's trying to run the primary on June 7th, district court has said that there is, when you look at the state factors, 11-1, as to him, district court has said that it's clearly in the public interest to have people eligible to vote and have a choice between candidates. But he's decided that on the likelihood of success that he did not believe that there was a reasonable likelihood of success. It would seem that you have a significantly better argument of saying I agree, but I don't want to lose the opportunity to raise both. Now, as to Mr. Lewis, for 22 of his 49 years on this earth, he's lived in New Jersey. He's acclaimed by New Jerseys as a native favorite song when he wins Olympic gold medals. He's in the New Jersey Hall of Fame. He purchased a residence in 2005, a fact omitted by the statute. He purchased one or two residences in 2005? Two residences in 2005. And none of that was not in the Secretary of State's decision, was it? It was absolutely not, Judge. As a matter of fact, if you check the deed records, it is two. Oh, that's right. Two places in 2005, one for himself, one for his mother, one for him to live in. Beginning in 2005, he starts transporting his belongings from California to New Jersey while he's living in New Jersey. 2007, May of 2007, he becomes an assistant track coach at William Barrow High School, from which he graduated, from which he ended up. He started programs, after school programs and honorary programs, award programs for the children of William Barrow High School and William Barrow School District, beginning in 2007. He moves the principal functions of his Carl Lewis Foundation to New Jersey. He purchases cars in New Jersey. He pays utility bills in New Jersey. He pays all of his property taxes in New Jersey. He goes to church in New Jersey. He's a member of the community and people know what he stands for. But he voted in California in 2009? He voted three times in California, Judge. He voted two elections in 2008 and once in May 2009. Judge, that standing alone is not indicative of the establishment of domicile. Carl Lewis testified unequivocally in the hearing before the Administrative Law Judge that it was his intent since 2005 to come to New Jersey, establish his domicile, and be a member of the community in New Jersey, again, after having been raised in New Jersey. This is not someone who just simply up and decided to move to New Jersey. His roots are here. His mother's here. I think it's very difficult to argue with that point. But he did have other ties with California besides the voting. The business for example. Sure. Business operations in California. But he's moved the principal operations of his foundation here. It's not unusual for people to have business locations in another state. Let's look at the second part, the second example of interstate, interstate dichotomy. If someone lives in New Hope, Pennsylvania, and owns a restaurant in Lambertville, New Jersey across the river, is familiar with the Lambertville community, the voters know he knows the voters. They serve, they receive news from the same media markets, both print and television. If that person, who meets at least two of the three criteria that the state offers, moves to New Jersey and files for less than four years for sin, he will be challenged under the existing arguments disqualified. Now, we add further to that the arbitrary distinction between a four-year term, a four-year restriction for a New Jersey state senator, as opposed to the two-year restriction for a New Jersey state assembly person. That was rejected in Robertson, convicted by the judge's deputies. And it was, that is what makes the scenario distinguishable and should be distinguished here. Because both the senate and the assembly serve discrete districts of 220,000 people. In New Hampshire, you have statewide senators, you have district senators, 21 district senators, and you have 400 members of the lower house. There is no constitutional distinction when it comes to duties between members of the New Jersey state senate and the New Jersey assembly. There are different duties, but they're not superior duties to one another. So you're asking the federal court to find the New Jersey state constitution, the provisions of the constitution? Absolutely, Judge. That is the question. I don't think there is any secret about that. You're not basically asking us only to deal with the federal constitution. You're only asking me to deal with the Equal Protection Clause of the federal constitution as it applies to this article of the New Jersey constitution, which you already decided by Robertson, Austin, and Hortense. If this assembly disagreed with you on the finishing challenge, what's your view as to this argument? Judge, I think I've characterized all the facts behind it. The contacts that he has with New Jersey. But I would say this in anticipation of what I might hear coming from the data centers. Carl Lewis hasn't released his platform yet. Well, as far as I know, Judge, neither has the data center who has lived here. Carl Lewis is known for his exploits in running and field events, but he isn't known for his exploits or achievements in some other form, in some legislative form. Well, he hasn't had an opportunity to become a legislator yet. We want the voters to have the opportunity to decide, to decide. So as to the answer to my challenge, you have to show a compelling state interest, and what would the argument be that they have not shown a compelling state interest? There's nothing in the record, by the way, if evidence or otherwise, that indicates that Carl Lewis is not familiar with the potential voters of the 8th District. Certainly over the last few weeks, he's become acquainted to virtually everyone in the newspapers and the news media. There is no showing whatsoever that Carl Lewis is not familiar with the issues. He's never been asked a question on the record, and he's been pursuing to establish it no matter how. There's no showing whatsoever. As to the concept of political carpetbagging, Carl Lewis has lived in New Jersey for 22 of his 49 years. He's not an opportunist moving to another area simply to gain an opportunity. To run for political office. And you serve it from someone else. I'm trying to suggest, judges, this four-year requirement imposed on senators who serve, by the way, terms of two years, four years, and four years. So for at least one term, every three terms, they serve the exact same term as the New Jersey State Assembly people. And this is the year that it happens. There is nothing, there is not a single thing in the record that has been produced or propounded by the government, by the state, that justifies or supports, by way of empirical data and foundation, that people are not familiar with Carl Lewis, that he's a political carpetbagger, or that the constituency, he's not familiar with the constituency of the 8th District. The 8th District includes four, I'm sorry, five new towns by virtue of redistricting that just occurred about a month ago. The incumbent senator, who was a precinct, not elected, never represented those five towns that are now in her district. There's four towns in Kennedy County, one town in Atlanta County. They're not even in the same county. In which the incumbent had held the position by way of acquittal. So there's really no gross distinction between the incumbent and Carl Lewis. But by imposing the four-year residency requirement on Carl Lewis, and disqualifying him from running for the office, excuse me, the non-voting choice, you're preserving, it wants to preserve the incumbent. Well, let's back up a little bit. I still have to say, it's hard to say, we are imposing, although the New Jersey state constitution requires us to impose, that voters, through a ratification process some time ago, and amendments to the state constitution that retain that four-year period, and even though I suppose he may be an extremely worthy individual and has ties, how do we deal with this New Jersey constitution? A couple of ways, Judge. First of all, the Attorney General of New Jersey has admitted on the record that they're not enforcing the one-year interest state provision. Right. So we know that. And we know that that would involve interest state travel, which largely we are thinking... Is that constitutional or statutory provision, that one-year? Constitution is in the same exact provision as before this court now. So we have that issue, that they're not enforcing the pattern. What we also have, and this is one of the distinctions between Sonoma and New Jersey, the New Jersey constitution was enacted about the whole document by vote in 1947, whereas the duration of residency requirements in New Hampshire were submitted to votes on those specific issues, and that was the crux of the judge's decision in New Hampshire not to reach that issue, the constitutional issue. Grossly different than what we had in New Jersey. And I think that when we look at that and we look at what we have here, we also have that there's no distinction, or should there be a distinction by way of privacy of office between the four-year and the two-year duration requirement. So there's no basis to establish that there should be a difference. In fact, the Office of the Senate was created, I think, some 60-some years before the Office of the New Jersey State Senate, which was another factual error that was in the district court's decisions below, on which there were numerous factual errors. Anything else you want to tell us? Judge, I would just like to briefly, if I could, to simply say that on pages 17 and 18 of Judge Hillman's supplemental opinion, there are factual errors, most of which I didn't mention. The Office of the Senator was established 60 years after Assemblyperson, but the Senate president and the Assembly speaker stand in line for succession on the government. There's an argument on page 17 where Judge Hillman said that Senators exercise taxing power. However, the New Jersey Constitution invests in the Assembly all appropriation authority under Section 3 of the New Jersey Constitution. Like a Senator, the Assembly position affects the whole state. They're in discrete districts, but their decisions impact statewide as a whole. There is, on footnote 15 on page 18, there is simply no factual basis for the conclusion that a state Senator exercises greater power or has more responsibilities than a member of the General Assembly. They're different, but they're not greater. I'm going to stress the imagination, and if I had the opportunity or was required to, I'd present proof on that fact. So I think, Judge, that there are critical distinctions here, distinctions between interstate and interstate travel. There is a distinction between the four- and two-year residency requirements in the Constitution that are not constitutional, and there is a distinction, and there is importance in the fact that the one-year interstate residency requirement did not apply by the Attorney General's office, although it still remains in the New Jersey State Constitution. Finally, Judge, because Robertson was summarily affirmed by the Supreme Court, in fact not raised alone by anyone, including the judge in citations, the standard applicability precedent applies here. If I could just finally say one thing, Judge. I know I've gone long on my time, and I appreciate the court's indulgence. There's also another case in New Jersey. I'm sorry, in this district, Welford, the Welford case. In Welford, following on... We're more aware of Welford. But the point is that following on Callaway and others, given today's technology, given today's ability for information transfer, given today's global economy where people can own a business in one state and live in another, I think it's important when we look at the district court's decision in Welford that the court there talks about the fact that if a person is committed to the position, they're manifesting their intent, and it's up to the voters to decide. If the voters ultimately decide that Carl Rose, because he was away from the state after having raised here, should not be elected senator, that would comply with the New Jersey State Law in the New Jersey Democrat Committee v. Sampson and the Anjani Fired case. That's where the issue should lie. The voters should not be denied that opportunity. Thank you. Thank you very much. We'll have you back. I'm sorry. Judge, did I ask you any questions? No, I just wanted to think about any questions. I'm sorry, Judge. It's hard for you. I think it's really true. Thank you, Mr. Tenders and Ms. Callaway. Thank you, Your Honor. Good morning. Good morning. The first question is, do you believe, do you believe that Mr. Lewis' counsel did not argue that's implied in the district court? In all fairness, it is really hard to say. I mean, and honestly, he was all over the map, but I believe that the district court barely gave him an opportunity to clarify that he was also looking for an asserted review. You said page 36. It appears as if he's looking to us possibly as an implied challenge. I'm sorry, Your Honor. You said page 36. It appears as if he, Mr. Lewis, is looking to us possibly as an implied challenge. Yes, Your Honor. That was the part of the argument where we were arguing abstention. And I raised to the court this concern because I believe, and I do respect the counsel, but the papers that he filed, particularly the verified complaint, were not that precise or articulate. And we have a real concern that a federal court not interpret a state constitutional provision that had never been interpreted. But if the federal court is to get involved with respect to a federal constitutional issue pertaining to a state statute, it would be far better, would it not, for a federal court to do so on an as-implied basis as opposed to a facial basis. Well, unfortunately, in this case, our concern was that in the court, the federal court fairly recognizes that it would have required him to, in the first instance, be the judge who would determine questions such as, what does a resident mean in our state constitution? What does the four-year term mean? That's how it was against the facts. But this is an argument of a state, and I'm just trying to see what are we arguing about. Because as applied, that's certainly different than facial. I mean, I don't think, from your perspective, you don't want a federal court saying, facially, that this provision in the Constitution ain't no good, whereas if the federal court were to say, as applied to Mr. Lewis, there's a problem, you live to fight another day. Yeah, that's fairly true. Although I have to tell you that I believe the district court made the proper decision on the facial analysis of the state constitutional provision. And it was a well-reasoned, a well-thought-out, and I thought, quite a detailed analysis of the Constitution. But the question is, was there also an applied challenge made that the district court didn't deal with? The district court was clear that he limited his review to, again, as an application challenge. Should he have done the application challenge? The question is, from our perspective, what we're looking for is, was there a waiver of the as-applied challenge? On the part of the Plaintiffs' Council? Yes. Yes, Your Honor, I believe that there was. In fact, we cited our brief, I believe it was page 20 of the transcript, and we cited that in our Third Circuit brief, in which Mr. Tambisi, I thought, was quite clear that, no, Your Honor, we thought this tended to be a court proceeding going on. We're looking for that court to deal with the Secretary of State's decision, and that necessarily has to do, then, with the facts of the decision. Well, if you look at page 20, from my jurisdiction, Mr. Tambisi said this is a separate claim. This is a claim where we are looking at the actual plain language of the Constitution. We're not asking you to interpret the New Jersey Constitution. We're asking you to apply the Egal Protection Clause of the 14th Amendment, let me just say, to that plain language of the New Jersey Constitution. The attorney goes on and says the children with adult conditions is a different issue, but it looks like he's talking about an extension there. And clearly, when you look at his verified complaint, one of the paragraphs, page 546, he's talking for relief for Mr. Lewis. I don't see anywhere in that complaint that it's not completely definitive. I agree with you. But it looks like it's asking for Mr. Lewis. It never specifically says, I'm making a facial challenge. It never specifically says, I'm making an as-applied challenge or both. But at least those two paragraphs come down to one individual. Yes. Yes, thank you, Your Honor. But again, I would have to say, based upon that piece of the transcript, plus his ability to support during the argument several points. I raised this, Mr. Sheridan raised this, for a clarification that we were before the court on a facial challenge, and at no point thereafter did Mr. Tambisi say otherwise. And I believe that the court, Mr. Court, was proper to have done the precision cutting that he did with this. Well, the official court had a reason. He got into the as-applied. He would be getting inextricably involved in state law if he didn't want to do so. But I don't see anywhere. I see a verified complaint that appears to be asking as-applied, even though it doesn't say it explicitly. And I don't see anything explicit in the transcript other than you saying, it looks like on page 36 he's arguing as-applied, but I'm not completely sure about that. And then he could come in and say, I'm not arguing as-applied, but he never comes in and does that. Mr. Tambisi was given the opportunity by the official court to stand up when the court said, I take this to be a facial challenge. He could have made a comment after I confirmed this with the court, after Mr. Sheridan made a comment, and yet he did not, for whatever reason, did not do so. And, again, I think that was because he could have made comments. But for a self-admission diagnosis physician, what possible interest does he have in making a facial challenge? He's really just interested on the gene set of the primary as to himself. Your Honor, you'd have to ask his counsel that. I agree with you. If I did, Mr. Lewis, what I'm concerned, as most candidates would be, that they want to get on the ballot, they want to get elected. It's absolutely clear that a facial challenge was made. There's no doubt about that. It is clear, Your Honor. The question that I have for the court in the extension argument is, are we here for one or are we here for more? Well, it's made in a certain place, but it's still being made today. It could be, yes, there is, I'm sure about that. Now, let me ask you this. Is it fairly characterized, Judge Hillman's view and Judge Nelson's, as a sort of informal obsession, as he didn't specifically say, I abstain on the as-a-product challenge. That, in effect, is what he did. And he dealt with only the facial challenge. And if I'm right, was that proper for him to do? That's an interesting view, Your Honor, that I had not thought of. I thought that my own reaction, when he was giving his own decision and then reading the supplementary decision, that the court made it quite clear that he was properly abstaining from any as-a-product challenge because it would have required him to have gotten into the issue of being the first court to determine the definitions within the state constitutional provision and also knowing at that point, at that day, that Mr. Tempe was in the state court. But he was being explicit in your view that he was abstaining on the as-a-prime. Your Honor, yes, in all fairness to the way I read his decision, yes, I thought he was clear. I had no question. I had no question. Also, I'm sorry, I talk a little better quickly. No, no, you're the lawyer here. It's the Huston County origin. But, you know, when I stood up and seconded him, I want to be clear that this is a facial challenge, Your Honor. The court did not say otherwise. And then when we listened to his decision, again, I believe he made a precise cut because he was very clear that he understood that he had the authority to, in a vacuum, if you will, rule on the federal constitutional issues that were raised by Mr. Tempe, and that really could only have been. Well, so we think that he's wrong. He was wrong and he should have ruled on the as-a-prime challenge. I think in your brief, you state that if we believe that's the case, then we should remand to the district court because that would call for fact-finding. Yeah, and again, in a legal academic vacuum, yes, I think that probably would be appropriate. But now you have the benefit of, you know, our health division having reviewed the records upon which the Secretary of State made her findings that Mr. Lewis did not meet the four-year residency requirements. So we're OK. Probably what I have is that you have before the New Jersey Supreme Court an issue that deals with this constitutional provision with regard to residency, whether it is a violation of the federal constitution and you have the same issue teed up before a federal court. If that decision were made first by the New Jersey Supreme Court, my guess is you would argue that that's wishy-washy and it's precluded from making an argument on the same issue with the same people before our court. I guess. Maybe since the New Jersey Supreme Court hasn't decided it, should we not weigh in at least as to the federal protection issue? You know, again, we have a problem with that. Not on the merits. Not on the merits. On the merits is OK to say. No, I understand that, Your Honor. I'll be very honest with you again. I would think that it would be inappropriate for the court at this juncture to make that kind of ruling. But at this point, we don't see that as to say it looks like he's out of luck with regard to what happens on June 7th, unless there's some sort of exception that's given thereafter. Well, he is out of luck. A part of it is he's not in a lot of state. It seems that that's a strategy that has been taken by the plaintiff to go to two courts at the same time, raise similar issues at the same time. What was raised in the New Jersey State Court proceeding? In terms of the penalty. Yes, but this was simply a deferential review of the decision of the Secretary of State, and we should look at it as nothing more than that. Now we're in the federal where the facial, as applied, challenge was raised in the New Jersey Court. The way I read Mr. Tampas's brief is that he raised before the court that the facial challenge, that the provision was not constitutional, the four-year requirement. And the third part of his – there were three parts of his brief. One was the Secretary's position was wrong. Two, that the equal protection provision is unconstitutional, and to me, I read his briefing as a facial challenge. And three, it was even if it is deemed to be constitutional, that Mr. Lewis satisfied with that, And I think you can't be faltered from that. I mean, you raise everything you possibly can. Absolutely. So what did the New Jersey Appellate Division decide, and where does it stand right now with respect to the order we got from the Supreme Court this morning? The standard of review for the Appellate Division reviewing the decision of a final agency It is that we look at the record and make a determination, is there a confident and sufficient evidence to support the finding of the agency head. That is the standard of review. It's not that the Appellate Division is looking at the issue de novo. And they necessarily have to look at the record, so they have to look at the facts relating to California and New Jersey, and they made the determination that the Secretary's position was well supported by the record, and they affirmed her. And now we are in the Supreme Court of New Jersey, where the Supreme Court simply denied Mr. Ted Lewis a stay request, which was to stay the precedent about Mr. Kennedy. What is the effect of the Appellate Division saying, we're not going to reach the constitutional decision? I think the court made that ruling, because they were aware that the Federal Judicial Court had made a facial determination. It wasn't binding. It certainly wasn't binding on that. No, they did not, in all fairness to the Appellate Division, they did not draw it. But, again, I think the decision of the Judicial Court was so well-analyzed. Well, that's a different issue. What about the Supreme Court's order? What does that mean? What is the practical effect that the Supreme Court is doing? The practical effect is that the three counties can go forward and print a ballot, and it will be without Mr. Lewis's name. So, wasn't that, in terms of what's before us, four factors? Doesn't that seal the error of a lot of factors? There is a rhetorical harm to the candidate, but the way we look at it is the larger harm is if you have on the ballot a candidate who doesn't meet the constitutional requirements. This is not an issue of a statute. This is an issue of a constitutional statute. I mean, Judge Olenbach said also the public interest weighs in favor of Mr. Lewis because you want a choice among voters. Yes, you do want a choice, but you want a choice of qualified candidates. And can I just respond to your inquiry on the election procedure? Yeah. Pretty much follow up on what Mr. Tanabuzi did say, but right now, if there's no candidate on the ballot in the Democratic primary, the state senate, and the legislative district, there is the write-in mechanism. It's available. You need, under a state statute, the number of votes equal to the number of signatures you would need on the nomination petition, and that would be 100. So, and, you know, you've got three counties involved here, not all parts of the three counties involved, but you would just need at least 100. I have a question. I'm sorry. Oh, go ahead. I just have a question on state law. Is there a simplification to write-in to anyone? Yes. Do we have to be a member of the Democratic party? No, no, you don't. It's the voter's choice, whoever they want on the ballot. In fact, if recollection serves me, I think we had that case in Weikert v. Hartman back in the 70s in our state where somebody of the opposite party was deemed to, was voted in by the voters at the primary election. Well, what is, and then, let's assume, then would that person's residency be challenged? It depends on who the person is. I don't know. If that person met the four-year residency requirement in the state, there would be no basic requirements. It would be better for him to be subject to challenge. It could be. And then you would, any time you want to challenge the result of a primary election, you know, you've got the state court proceeding under Title 19, Chapter 29. It's an election contest. You go to court. If the court would deem that the primary election nominee was not qualified, because you really wouldn't have time for another primary election before the November general, you would then kick in the staff of 19, 13, there's 20 whereby second members of the county committee of that party would then pick the nominee so that there would be a balance. What if nobody gets, well, somebody would probably get rid of them. But let's assume the primary took place and there was no nominee. Is there a mechanism to put somebody on after the primary? No, there would not be. But then what you have in the general is you have the right mechanism. Once again, doesn't that seal the deal for irreparable injury to Mr. Lewis and public interest in his favor as Judge Shulman noted? Again, I would go back to the fact that under a primary injunction, we didn't have to satisfy all four. No, I'm not asking for that. You can look at all four factors. I mean, he said that those two factors which come down in favor of Mr. Lewis were offset by the fact that he believed or by his conclusion that he believed in dealing with this patiently, ultimately, and that there was not a reasonable likelihood of a success. The question here is, should we have dealt with an applied challenge? And that's what we've been talking about. And if so, the test is, does the state have a compelling interest? Three things that we see are, do the voters know the candidate? Does the candidate know the district and the people of the district? And is the candidate just coming in as a carpenter bagger? And it looks like, in this case, there's a pretty down-to-earth argument that Mr. Lewis knows the people, they know him, and he clearly is not a carpenter bagger. Well, first of all, we believe the court did properly explain and narrowed the case as he thought appropriate. And, again, your review, I want to respect at this point, is did the district court exercise the discretion of this rule? We don't believe he did. But if you want to get into this culprit, Mr. Lewis, we've determined he does not meet the four-year residency requirement. It is very difficult to— When we get to the merits of the ruling, because what I'm talking to you about is not so much New Jersey requirements as the constitutional requirements as they apply to a stay concerning one individual, Mr. Lewis. So all the stuff on the statement, you may be right. The point is, if you've got two of the four factors, that even Judge Hillman is saying, even if the official challenge comes down in favor of Mr. Lewis, if you look at this as an applied challenge, not that you will win, but is there a reasonable likelihood of success, not greater than 50% of the sliding scale? We would take the merits from you for the state that, no, if you wanted to maximize it. There is no way we can do that. There's a possibility. In the grand scheme, yes, there's always a reasonable possibility. But if you look at the fact that this is somebody— I'm sorry, I know I'm trading the facts, and that's kind of part of the drug idea, but you're looking at somebody who, as of a year and a half ago, was telling the state 3,000 miles away that he was domiciled and lived there, and whether or not he could vote there under penalty of war, if that were not really the case. To the extent that you are right, that you do have to somehow get into the weed with the facts in dealing with the state issue, the district judge here did not do any narrow tailoring of the interest here. Why would we do what Judge DeRiver suggested, which is you would end the state, or you would hand back the judgment, and ask him to consider the as-applied challenge? Because we believe the district court did not abuse his discretion, and we believe that there's no basis here. You're not—I don't believe that he can prevail in the possibility of success. If it was before him, and it wasn't waived, then it might be an abuse of discretion. If it was before him, and it was waived, it might not be. I'll go back to what I articulated earlier, that Mr. Tanzuzzi waived his request for an as-applied challenge. I don't see it in the record. Usually, because you see this all the time, when you have bifurcated issues, you could have a file order for purposes of an appeal. If you say, okay, the order that isn't filed, I read it. I just—that's it. Then we'll let the other matter go up on appeals and file an order. But it has to be an explicit waiver, and I don't see anything—I mean, you're saying here, I don't know what this guy's arguing. Right. That's fair. At that point, yes, that's fair. That's what I did say. But I believe that the district court clarified that, and there was no objection raised, that it was the court limiting his review, under central principle, to the facial removal. Let me ask you a couple questions, so there is some confusion in my mind. Mr. Tanzuzzi said that there was a mechanism, he thought, to get on the ballot through a court order. Yeah, I think it's a fair statement on his part. Under our state law, if you're a candidate for a primary election, you can have, per state office, a committee on vacancies. It's three individuals you would name in your nomination petition. Mr. Lewis didn't do that. And if somebody vacates their nomination for the election, 48 days before the election, the committee on vacancies, the three come together and give the secretary of state another name. What I think Mr. Tanzuzzi is alluding to is that this court would—the state court, federal court, would rule that Mr. Lewis cannot be on the ballot because it's too late, because we're past the 48-day deadline for the committee on vacancies. I would tend to agree to a court. We would need a court order to accept or replace the candidate. And when Senator Lautenberg was put on the ballot on Saturday, so it was a true, not satisfied court order in the New Jersey Supreme Court. Yeah, it was your order. I know it was beyond the deadline. That's right, that's right. And in that case, the court was not dealing with any issues of candidate qualification or any issue of a state constitutional provision. It was a state statute, which had the limitation on filling a vacancy for the primary election. Okay, let me go back to the Appellate Court order, if it is correct, that constitutional issues were raised in that case, and they declined in federal division in the fact of abstaining from design. Can a federal court correct that or deal with those issues, or is there any that if they made a mistake and should have dealt with those issues, that it's only the New Jersey Supreme Court that can correct them? Or are we free to do it because they decided they didn't want to do it? We think that if he's got a dependent state proceeding, and he is before the state Supreme Court, so we are arguing that that's where the entire case should be properly resolved, especially as it pertains to your side. Well, you're saying that it ought to be, you know, an Appellate Court decision, or would they leave it open for us to retain it and do whatever we thought was right? I think what you may be stuck with is, in effect, an attempted collateral review of a state agency decision here in the federal court, so we would find it to be rather problematic, Your Honor. Can I just break a couple of other points? A couple of other points, I'll leave them. Okay. The Robertson decision of Judge Davenport, why isn't that helpful to us? It's not helpful to you because it's a completely different set of circumstances. That was a situation where someone's ability to satisfy the one-year legislative residency requirement amounts to trying to satisfy every 10 years a potentially moving target because, as you well know, every 10 years every state has to do legislative apportionment depending upon the census numbers, and the legislative district lines in the state, I think in any state, are not static, unlike the boundary lines of a state itself. So that, to me, is an extremely critical difference between a state residency requirement and a legislative district requirement. That's why I think the district court is absolutely correct to rely upon the scenario. But if the scenario applies, then it is a compelling interest, and how is this provision the least restrictive means of advancing New Jersey's community interest that you told us about? That the voters don't have any interest, the voters say it's not groundbreaking. It is absolutely critical. How is this the least restrictive means of doing that? It's interesting. When I look at Mr. DiArte of opposing counsel, they would prefer that, you know, there just be a two-year residency requirement vis-à-vis the assembly. But I think that the court below, and the courts of Sanino and Scimento in terms of the issue of governor, really honed in on the significant powers of a state senator. I do not agree with Mr. Kemp. We see that as an assembly person and a member of the Senate are basically co-equal. The powers of the Senate are quite awesome. It is the 40 members of our state Senate who will decide on who will appoint. But how is this the least restrictive means throughout? It's not detailed, Your Honor, in the sense that the way we look at our system and our state constitution, it's a sliding scale in terms of the residency requirement, depending upon how high up you go in state office. Governor has to have a seven-year residency requirement. State Senate, second-highest state office in our state, 40 years of assembly total. And then, you know, the other point that came across to me when I was re-reading Sanino and Scimento, especially Sanino, is if 40 years on that stage, seven years wasn't the appropriate term, then what is? Where is the federal court supposed to go? How are you supposed to make that decision? Let's assume for reasons of federalism, the federal court respects New Jersey state constitution. How do we deal with the fact that the state is unwilling to enforce that on your requirement? It's also in the state constitution. Isn't that a good line of argument? No, I don't think that at all. I think it shows that the state of New Jersey respects the decisions of the federal court. The federal court told the state that you cannot apply that one-year residency requirement. It would seem to be constitutionally unenforceable. I think if the state had decided to ignore that, those federal court rulings, I think we would have been in a more unaccountable situation. And we had a state case. So your position is you're commanding to do so by the federal court? There is absolutely not a doubt in my mind, John, that we had no other deal. And there are hundreds in maybe other states as well. You'll have a state provision on paper that's been deemed to be unconstitutional and it takes some time to get it off the books, so to speak. But I would like to make a comment that, unfortunately, I did not make below, but just in terms of having a full appreciation for our state constitution. You don't want us to think it's right, do you? Just kidding. Unfortunately, I didn't know. This is not to tip it one way or the other, but I know that improperly so a council has made a point of the voters in New Hampshire having had a chance to vote on that constitutional provision. And it is true. In 1947, the state voters were not asked to vote on the entire state constitution. But I also did not realize until last night that they also had a second shot at it in 1966. So we've had two times in our state voting upon the four-year residency card, which has been in effect for 167 years. And, again, that factor, to me, leads a lot, heavily, towards the Senate and the Trineto rulings in terms of the New Hampshire state constitution. Good. Anything else you have to tell us? I think I have sufficiently articulated his position. Okay. Anything further? I have no other questions. Okay. Thank you very much. Mr. Sheridan. Good morning. Good morning. May it please the court. Mark Sheridan from Trentonville and Reed on behalf of the interveners. Your Honor, at the outset of this argument, you asked what I think is the most important question. The New Jersey State Supreme Court has the most significant interest in the resolution of this matter, and it determined to pass on the matter. It views the application of the constitution. Nobody has yet dealt with the federal constitutional issue as it applies to and as it was challenged, has it? Your Honor, certainly the state courts did not. Judge Hillman did not directly take it on. However, I believe his decision covers the as-applied challenge. How? On more than one side. He says when they try, they ain't going to deal with it. The standard he applies for the facial challenge, the component state interests, and the narrowly tailored, he concludes were met. They're met as to Mr. Lewis's will. In that regard, this issue has been marked. In the record? In his supplemental opinion, Judge Hillman finds that there was a compelling state interest with respect to the four-year residency requirement. And if there's a compelling state interest, and he didn't even deal with whether it's narrowly tailored to the least restrictive means. I don't think that was at all intended statement of Judge Hillman. Your Honor, it's in a footnote, I believe. It is in a footnote. He deals with whether New Jersey can and should address the four-year residency requirements. The state's adding a two-year residency requirement. Why would he address directly narrow-tailored, which is what you have to do when you analyze a constitutional provision on an as-applied basis? Well, Your Honor, if I could say two things. One, I don't believe strict scrutiny clauses matter. I know you've said that, although it's interesting that page 18 and 20 of your briefs didn't say the other. Actually, you're arguing that it's not strict scrutiny. You're arguing it may not even be heightened scrutiny, right? I believe it's not heightened scrutiny. Your Honor, you asked Mr. Tambuschi about what he said. Just while we're on that, what did your briefs say in the district court? We adopted it for purposes of argument. We did reserve an argument that there was a rational basis that this should be applied, based on the comments, that there was no fundamental right to run for office. We raised that issue. We preserved it. We argued it. We cite scenario instrumenta, and we say that to the extent that the court— Without question. Your Honor— I don't believe it does, Your Honor. All it does is demonstrate that even under the district court standard, meat meets the burden. I believe it's in the footnote—I think it's footnote 15 of the supplemental opinion that addresses the issue. How would you determine, in a case like this, how would you—I'm sorry. You can finish your response. I believe it's been addressed there in the footnote by Judge Sullivan. Supplemental opinion. How would you decide, in our tailoring, on an issue like this? That is, whether it's four years or three years or two years or one year or six months or whatever, how does the court fashion that particular standard? Your Honor. I think that skips a step. Mr. Lewis is obligated to demonstrate that a fundamental right is infringed. With respect to him, as a plot, he hasn't done so. Judge Ambrose asked Mr. Tenbusy about what he said in his complaint in Paragraphs 45 and 46 about it being a facial or an ossified challenge, and said he was vague. He was not vague in Paragraph 44. I apologize. He was not vague in Paragraph 44. Paragraph 44 was that this violates the Fourteenth Amendment because it infringes upon Mr. Lewis's fundamental right to run for office. I submit to this Court there is no such fundamental right. Established Supreme Court precedent says so. As such, having failed to articulate a fundamental right, he doesn't get the ossified challenge. And he talks at times in his brief about the fundamental right to travel. There's been an absolute failure to address how that applies any more so to Mr. Lewis than anyone else. There is no fundamental right implicated that we should get to an ossified challenge. We understand your position. If we disagree with you on that, how would we deal with a narrowly tailored issue? Is it possible for us to do? That is, how would we impose our own standard? Or is it, I guess, guesswork on the part of the federal court? I would say that the issue of narrowly tailored should be left to the states. It's a state issue. State shows how to address. But somebody has to analyze it, so if I don't, what happens? I mean, you have state requirements, but the question is, do those state requirements meet the strictures of federal constitutional law? And has that been analyzed yet so far in this case on an as-applied basis? I don't think so. Not in this case, Your Honor, but the precedent from the circuit courts and the Supreme Court says that there's a reason for that. It's because you can't address it with mathematical certainty. It can't be done. It's five years too much, it's two years too little. It can't be done. It's very difficult, my job, but that's why. The question is, when you have an individual, as I said, I have an individual here who's lived 22 of his 49 years in New Jersey. He's purchased two homes in New Jersey in 2005. He began teaching or coaching on track at Willowboro in 2007, and he's saying now he's political. And the reasons that supposedly are given as to why you have the order requirement is so the other lawyers, they don't do, and they're not talking about you. And he's saying, I'm different. I'm different than the others. This is a different case. And in that context, two things. One, that's nothing more than a masked attempt to revisit factual findings of the Secretary of State. It's an effort to get behind it. Mr. Templesee stood up here and told you about all the things that should have been found and should have been analyzed in a certain way to determine whether or not Carlos met before the residence requirement. That's been done. State court did it. Secretary of State did it. Supreme Court took a case on it.  And put this court in the absolute. Who's going to deal with it as applied challenge then? Who is the New Jersey Supreme Court? They're running for federal law. This is what we want to get to the court. They haven't decided that yet. They have not decided that yet. Your Honor, which puts us in the position we're in today. Mr. Templesee chose to play games with issues of comedy and made higher controversy back during New Jersey. I would agree. I'm not quite sure all the things he was or was not arguing yet in the district court. But he's now saying that clearly it was, as a matter of fact, I think it's clear that it was argued as applied. He's now saying he was arguing as applied. And somebody, is it Mr. Lewis to tell that somebody decided that sometime? Your Honor, if you play fast and listen to the rules, you shouldn't be surprised to find yourself in that home. If you play fast and listen to the rules, you're probably running for the primary. Your Honor, they came to the trial court and the trial court said, I have real concerns about the as applied challenge. Mr. Templesee didn't say to the court, Your Honor, I need you to rule on that. What he said was, never mind, let's deal with the official challenge. I don't see a waiver, but it's not completely clear. It's certainly not clear that he waived it explicitly. And as Ms. Kelly said, it's not quite clear what he's arguing. If I had to take a guess, just if I could rest for a second, my guess is that counsel would like a big decision. And I understand that it was just very explicitly entitled to do that. The question here I have that I'm focusing on is Mr. Lewis specifically. Your Honor, he attempted to argue this in two separate forums. And he kind of caught when the courts were betwixt and between. But Mr. Campbell, that's of his own doing. This court should not bail him out at this point in time. It is not the role of this court to bail Mr. Lewis out. It's not helpful for us to look at it in terms of bailing out or not bailing out. Lawyers do what they think is going to help their clients. I'm trying to figure out whether we as a federal court can review what is in essence a state court decision when they have decided to pardon the case. What is your view on that? My view is you cannot. This court does not sit as a higher court of appeal for the New Jersey Health Commission. Nor does it sit as a higher court of appeal for the New Jersey State Supreme Court. But there's a federal constitutional issue that's never been addressed. Except by the facing judge.